**John R. HARTMAN, Jr., Plaintiff,**

v.

**REMINGTON ARMS CO., INC.,
et al., Defendants.**

No. 90–4074–CV–C–5.

United States District Court,
W.D. Missouri, C.D.

April 13, 1992.

Order on Motion for Reconsideration
April 28, 1992.

Order May 5, 1992.

Protective Order June 15, 1992.

**674**

Richard C. Miller, Woolsey, Fisher, Whiteaker & McDonald, Springfield, Mo., for plaintiff.

John W. Shaw, Lathrop & Norquist, Kansas City, Mo., Ronald R. McMillin, Carson & Coil, Jefferson City, Mo., for defendants.

## ORDER

SCOTT O. WRIGHT, Senior District Judge.

The Court has completed its review of the documents submitted *in camera* and the briefs concerning plaintiff's original motion to compel production of documents. This issue came before the Court on remand from the Eighth Circuit Court of Appeals. *In re Remington Arms Co., Inc.*, 952 F.2d 1029 (8th Cir.1991). After review of the matter, the Court rules that Remington Arms Co., Inc. shall produce the documents specified in Appendix A under the safeguard of a protective order.

Defendant Remington Arms Co., Inc. presents two arguments for the Court to find that it should not be required to produce the documents. First, Remington argues that the documents should not be disclosed, or should only be disclosed under the most restrictive of protective orders, because: (1) they are irrelevant to plaintiff's claims concerning the Model 700 rifle; and (2) they are highly sensitive trade secrets, pertaining to an as yet not developed New Bolt Action Rifle. "NBAR" is the acronym for "New Bolt Action Rifle." Secondly, Remington contends that the documents should not be released even under a protective order, because a protective order cannot adequately protect their interest in confidentiality. At the heart of Remington's second argument is the claim that counsel for plaintiff previously has violated protective orders issued in other cases.

Federal Rule of Civil Procedure 26(c)(7) affords protection in cases where discovery involves trade secrets. The rule provides that a court may limit the terms of disclosure or refuse disclosure where good cause is shown, such as in the case of a trade secret or confidential information. A court must balance the competing interest in disclosure and discovery against the interest in confidentiality.

As the Eighth Circuit has advised, the court inquiry involves two parts. First, the party opposing discovery must show that the information is a trade secret or confidential information of a proprietary nature requiring protection, within the meaning of Rule 26(c)(7). Missouri law applies to determine whether the documents are trade secrets. *See A.B. Chance Co. v. Schmidt*, 719 S.W.2d 854, 857–58 (Mo.App.1986) (defining trade secret in context of employment contract restricting disclosure). Then the burden shifts to the party seeking discovery to establish relevancy and need. *In re Remington Arms*, 952 F.2d at 1032. If the party successfully shows both relevance and need, then the court must weigh the potential injury from disclosure against the moving party's need for the information.

In this case, if Remington shows the NBAR documents are trade secrets and Plaintiff Hartman shows their relevancy and need, then the Court must issue an appropriate protective order to preserve the interests of the parties. *Centurion Indus., Inc. v. Warren Steurer & Assoc.*, 665 F.2d 323, 325 (10th Cir.1981). Before designing a proper protective order, the Court must consider Remington's second contention that plaintiff's counsel has permitted unauthorized disclosures of informa-

tion covered by protective orders in prior cases. If a protective order cannot prevent unauthorized disclosure by plaintiff, then the Court may find it appropriate to deny production of the documents.

### Trade Secrets

The Court has reviewed each of the documents filed *in camera*. Defendant claims the NBAR documents are privileged and should remain confidential because they are trade secrets. Although some of the documents are privileged and constitute trade secrets independently, defendant maintains that all are privileged because they are part of the compiled NBAR files. According to Remington, once it included the documents in the NBAR development files, they became part of the NBAR trade secret and would show the company's developmental design process and files.

■ Missouri law utilizes the definition of trade secret presented in *Restatement of Torts* § 757(b). Trade secret information, such as a process, formula or design, must be secret or it loses its privilege of confidentiality. *A.B. Chance Co.,* 719 S.W.2d at 858 (quoting five factors from *Restatements* § 757(b), defining a trade secret). Trade secret is a flexible term and involves a number of factors to assess the party's interest in confidentiality.

■ Defendant bases its privilege on the assertion that the documents are NBAR trade secrets. The Court's review of the materials and the briefs submitted indicates that many of the documents do pertain to the NBAR product that remains in the development stage. However, some of the documents concern products other than NBAR. Giving a broad interpretation to Remington's privilege claim, the Court finds that defendant has demonstrated the trade secret privilege applies to the NBAR documents and to other documents included in the files.

### Relevancy and Need

The next question is whether plaintiff has demonstrated that the documents are relevant and needed. Remington's contention that the documents are irrelevant and entitled to all-encompassing protection goes too far. Although defendant hinges its privilege on the fact that the NBAR files are trade secrets, the documents are not limited to NBAR information. A few documents are copies of magazine articles, already part of the public domain even though they have added significance as part of the NBAR files. A large number of the NBAR documents include significant references to the Model 700, as well as to similar models of defendant's products. Under Remington's assertion, any document placed in these files is privileged as a trade secret because it is part of the "compilation of information." Taking defendant's argument to the "nth" degree would encourage defendants to merge research on existing/old products with development of new designs in order to avail themselves of the trade secret privilege for all documents placed in the on-going research files. The documents do not lose their relevance to plaintiff's claims simply by their placement in the NBAR files.

In this case, plaintiff seeks discovery of information for his product defect, negligence, and other tort claims. Many of the documents relate to plaintiff's claims. Plaintiff alleges that the Model 700 design is flawed with respect to its safety, trigger mechanism, bolt lock, and accidental firing. Plaintiff further alleges that NBAR is simply a continuation of the Model 700.

A review of the NBAR files reveals their relevance to the issues of causation, feasible alternative designs, and defendant's knowledge at the time. Plaintiff asserts, and defendant has not refuted, that the company's research and work on Model 700 curtailed in the early 1980's, around the same time that the NBAR design was getting off the ground. The features addressed in the NBAR documents are relevant to Remington's knowledge of design alternatives and of problems with Model 700.

Plaintiff also has demonstrated the need for these documents. Without the NBAR documents, plaintiff is left with a significant time gap in the evidence concerning

the design information known to defendant; the evidence also provides the only source of admissions and information on defendant's knowledge of alleged Model 700 defects, testing done on Model 700 and alternative components.

Two examples illustrate the overbreadth of defendant's contention that all the documents are entitled to absolute protection as NBAR trade secrets. The first example is an undated note from Ed Herring on a photocopied page from a magazine or book, File 11 Document DF 46. The note specifically addresses incorporating an alternate component in the Model 700 rifle. Defendant asserts that the document is part of Mr. Martin's NBAR files, "perhaps because of the drawing of a competitive fire control contained therein." Despite the fact that File 11 Document DF 46 expressly refers to the Model 700 and its safety options, defendant's index reveals that it has never been produced to plaintiff and that its only basis of confidentiality is as "compilation of information."

The second example appears to be a customer letter, from Bob Hagel, about the Model 700 written on February 9, 1984, File 11 Document DF–1468. Defendant's counsel explains that Mr. Hagel is a gun writer. Although this letter discusses only the Model 700, counsel explains that the letter was directed to the NBAR design team and placed in the NBAR files because it suggested an added Model 700 feature which the NBAR team is considering for the new design. Documents DF–1466–67 and 1469 relate to the Hagel letter and the feasibility of alternative designs.

Plaintiff has established that the NBAR documents are relevant and needed.

### Balance of Interest

Where information has been found both relevant and necessary to a plaintiff's case, the court then must balance the defendant's interest in confidentiality against the plaintiff's need for the information. *Coca-Cola Bottling Co. v. Coca-Cola Co.*, 107 F.R.D. 288, 291–93 (D.Del.1985). Generally, an appropriate protective order can preserve the interests of both parties. *Centu-*

*rion Indus., Inc. v. Warren Steurer & Assoc.*, 665 F.2d 323, 325 (10th Cir.1981).

A balance of the competing interests in this case undercuts defendant's claim of absolute privilege. In a case where opposing party is a competitor, defendant's files as a whole would be due a greater level of protection. Here, plaintiff is allegedly the party injured by tortious wrongdoing. Discovery of the documents is critical to plaintiff's case.

The Eighth Circuit directs that, on remand, this Court consider Remington's allegation that plaintiff's counsel previously permitted unauthorized disclosures of information covered by protective orders in past cases. If a protective order cannot assure the confidentiality of Remington's documents, then discovery must be denied. The parties have fully briefed the issue.

Remington alleges two violations of past protective orders. The first involves a deposition of Stuart Otteson, taken by plaintiff's counsel in the case of *Davison v. Remington Arms Co. Inc.*, Case No. 89–56RG (C.D.Cal.), where counsel allegedly disclosed protected documents from *Chapa v. Remington*, Case No. 13,461 (D.C. Duval County, Tex.). The second allegation concerns disclosures of documents protected in *Lewy v. Remington Arms*, Case No. 83–3172–CV–S–2 (W.D.Mo.), to plaintiff's expert John Butters prior to Mr. Butters executing an affidavit concerning their confidentiality.

### Violation of Chapa Order

Remington alleges that plaintiff's counsel improperly disclosed protected documents to Mr. Otteson, during the course of deposing Mr. Otteson. The documents were part of the protected information in the *Chapa* case. Plaintiff makes two responses to this charge.

First, plaintiff contends that Mr. Otteson was a defense expert and, even if he was not identified as a defense expert, he was an employee or expert for purposes of the deposition. Plaintiff asserts that, in deposing an adverse witness, disclosure was proper and that plaintiff is not responsible for assuring that defendant's employees

and consultants comply with the protective order. Plaintiff contends that counsel for Remington has admitted in prior cases that Mr. Otteson was a consulting expert for the company and when he appeared for deposition three Remington lawyers attended. Defendant has submitted a series of carefully worded affidavits to refute the contention. Mr. Otteson avers, in his affidavit, that plaintiff's counsel served him with a deposition notice for the *Davison* case and sent him documents. He does not describe the documents or otherwise identify them. Noticeably, Mr. Otteson does not state whether he was under defendant's employ or hired as a consulting witness in the *Davison* case. Mr. Shaw, Remington's counsel in *Davison,* expresses in his affidavit that defendant had never identified or retained Mr. Otteson as an expert in the case; he does not address whether Mr. Otteson was otherwise in the employ of Remington. Mr. Ware, counsel for Remington in other cases, provides his affidavit stating that he has hired Mr. Otteson as a consultant for preparation in litigation in other cases. Mr. Ware also attests that he is not part of the *Davison* litigation and has only bare knowledge of the case, however, he affirms that Mr. Otteson is not a consulting expert in *Davison,* to the best of his knowledge.

Second, plaintiff asserts that the documents disclosed to Mr. Otteson were not protected trade secrets because the trade secret privilege relating to those documents has been lost or diminished through a series of trials and inadvertent disclosures. The *Chapa* protective order permits disclosure of confidential documents to persons whose services are necessary to the litigation. Only one of the documents which plaintiff identifies as potential *Chapa* documents is designated as confidential. That document, plaintiff asserts, became unprotected when it was admitted as evidence in the *Lewy* case. Moreover, plaintiff argues that the *Chapa* order permits limited disclosure for other litigation and does not proscribe disclosure to Remington's experts.

The Court notes that Remington never brought claims of a protective order violation to the attention of the *Chapa* or *Davison* courts. Although Remington contends that deposing Mr. Otteson was improper under Fed.R.Civ.P. 26(d), it never raised that objection in the *Davison* case. The three carefully worded affidavits lend little support to defendant's assertion that Mr. Otteson was not an employee or consultant of Remington. Moreover, defendant has failed to identify any document that was improperly disclosed to Mr. Otteson. Plaintiff has identified the pertinent documents and has explained that the documents are unprotected by the *Chapa* protective order because they had previously lost their protected status. The Court finds no violation of a protective order, based on the evidence presented.

### Violation of Lewy Order

Remington next alleges that plaintiff's counsel improperly disclosed documents protected in *Lewy v. Remington Arms,* Case No. 83–3172–CV–S–2 (W.D.Mo.), to plaintiff's expert John Butters. The essence of the alleged violation is that Mr. Butters failed to execute the required affidavit promising to keep the information confidential *before* he viewed the documents. Mr. Butters did execute such an affidavit *after* the *Lewy* case was concluded and the affidavit was filed following post-trial motions in the *Lewy* case, as required by Paragraph 4 of the protective order.

Defendant contends that this "after-the-fact" compliance is not compliance at all and constitutes a violation of the *Lewy* order. Defendant makes no claim that the alleged violation was raised before the *Lewy* court. Nor does defendant allege any harm accrued from the belated execution of Mr. Butters' affidavit.

Mr. Butters has been identified as a plaintiff's expert in more than a dozen Remington-related cases, and he attests that he knew beforehand of the applicable protective order and the confidentiality of the documents. Mr. Butters explains that he has previously seen the same documents in similar Remington cases, so he did not view them for the first time in the *Lewy*

litigation. He vows that he has retained their confidentiality and never will disclose or discuss the information outside the terms of the protective order.

Paragraph 4 of the *Lewy* protective order applies and Mr. Butters should have executed the affidavit prior to viewing any protected documents. The Court finds that plaintiff's counsel substantially complied with the *Lewy* order. This compliance is adequate, in the absence of some showing of harm.

*Weighing the Interests*

Defendant has established that the NBAR documents are entitled to protection as trade secrets. Plaintiff, on the other hand, has shown the relevancy and need of those documents. After weighing the party's respective interests, the Court determines that disclosure with certain exceptions is appropriate. A protective order can adequately safeguard defendant's interest in the confidentiality of the NBAR documents. Some of the documents are entitled to absolute protection because they feature the actual designs for the NBAR product; defendant will not be ordered to disclose those documents, as specified in Appendix A. A weighing of the competing interests results in a ruling that all documents in the NBAR files, other than those specified here, should be disclosed under the guise of a protective order.

*Conclusion*

Once defendant established that the *in camera* NBAR documents are probable trade secrets, plaintiff made an adequate showing of their relevance and need. Defendant has not demonstrated its claim that plaintiff's counsel violated the *Chapa* protective order. The evidence pertaining to the *Lewy* violation, the "after-the-fact" affidavit, constitutes a technical violation; substantial compliance has been satisfied and no harm has resulted. While compliance with court orders is mandated, each counsel must evaluate whether these kind of technical, insubstantial violations of protective orders should be brought to the attention of the courts. In the future, defendant would find it advisable to raise objections to disclosure or allegations of protective order violations before the court which issued the order. That would lend credence to defendant's allegations of such violations in later proceedings.

The Court finds that the competing interests weigh in favor of defendant with respect to certain documents; those documents are specified in Appendix A and are entitled to absolute protection, due to their highly confidential nature. The Court resolves that defendant's proprietary interest in the remaining NBAR documents will be adequately protected by a properly worded protective order. Remington and plaintiff will be ordered to file a joint proposed protective order for the Court's approval.

It is hereby

ORDERED that plaintiff's motion to compel discovery is granted in part, as described in this Order. It is further

ORDERED that Defendant Remington Arms Co., Inc.'s motion to reconsider is denied in part and granted in part, to the extent described in this Order. It is further

ORDERED that the parties shall submit a joint proposed protective order for Court approval, on or before **April 23, 1992.** It is further

ORDERED that Remington is required to produce the documents as described in Appendix A, attached to this Order. All documents shall be disclosed under the terms of the protective order.

## APPENDIX A

Remington Arms Co. Inc. shall produce for discovery the documents noted below. Remington should provide plaintiff the index of the disclosed documents which indicates the name of the file numbers referred to below. Pages that are part of the same document should be fastened together.

File 1

**Produce all documents in this file *except:***
DF 2935

Any documents dated *after* November of 1987.

****

****

**File 2**

**Produce all documents in this file** *except:*

DF 6

DF 47

Any documents dated *after* November of 1987.

**File 3**

**Produce all documents in this file** *except:*

DF 149

DF 271

DF 273

DF 331–33

DF 365–69

DF 374

DF 1577–84

DF 1597–1600

DF 1980–86

DF 2656–86

DF 2658–61

DF 2684–85

DF 2693

DF 2695–98

DF 2733–34

DF 2736–51

DF 2782–83

DF 2795–97

DF 2807

DF 2814

DF 2822–23

Any documents dated *after* November of 1987.

**File 4**

**Produce all documents in this file** *except:*

DF 687

DF 919

DF 923

DF 1281

DF 1595–96

DF 1601–06

DF 1628–31

DF 1792–99

DF 1805

DF 2077–78

DF 2083–86

Any documents dated *after* November of 1987.

**File 5**

**Produce all documents in this file** *except:*

DF 886

DF 1622–26

DF 2117

Any documents dated *after* November of 1987.

**File 6**

**No documents in this file need be produced.**

**File 7**

**No documents in this file need be produced.**

File 8

**Produce only the following documents in this file:**

TM 223 — May black-out all of this document *except* title, date and distribution information.

TM 225 — May black-out all of this document *except* "New Bolt Action Rifle" section, which includes 17 lines of text.

TM 226 — May black-out all of this document *except* "Model 700 Classic" section, which includes 12 lines of text.

TM 423 — May black-out all of this document *except* title, date and distribution information.

TM 425–26 — May black-out all of this document *except* "Model 700 Mountain Rifle" and "New Bolt Action Rifle" sections.

| | |
|---|---|
| TM 431 | May black-out all of this document *except* "Mountain Rifle" section and author information. |
| TM 610–11 | May black-out all of this document *except* title, date and distribution information and Paragraph 8. |
| TM 615–16 | May black-out all of this document *except* title, date and distribution information and Paragraph 8. |
| TM 623–24 | Produce entire document. |
| TM 1534 | Black-out all *except* date and first sentence. |
| TM 1537 | Black-out all *except* sections on "M/700 Stiff Safeties" and "M/700 Take Down Screws." |
| TM 1551 | Black-out all *except* title, date and distribution information. |
| TM 1553–54 | Black-out all *except* sections on "M/700 Stiff Safeties" and "M/700 Take Down Screws." |
| TM 5284 | Black-out all *except* title, date and distribution information. |
| TM 5285 | Black-out all *except* title and first sentence. |
| TM 5287 | Black-out all *except* entire section on "NBAR Status." |
| TM 5288 | Black-out all *except* author and position-title. |
| TM 5295 | Black-out all *except* title and entire section on "NBAR," which is 17 lines of text. |

File 9

**Produce only the following documents in this file:**

| | |
|---|---|
| RR 54 | Date and distribution information only. |
| RR 56 | Black-out all *except* "Bolt Action Rifle Development" section. |
| RR 69 | Date and distribution information only. |
| RR 72 | Black-out all *except* "Bolt Action Rifles" section. |
| RR 89 | Date and distribution information only. |
| RR 91 | Black-out all *except* "Bolt Action Rifles" section. |
| RR 92 | Black-out all *except* "Model 700 Classic" section. |
| RR 93 | Black-out all *except* "Warning Rollmark" and "model 700" sections. |
| RR 95 | Date and distribution information only. |
| RR 98 | Black-out all *except* "Model 700 Classic" and "Model 700 No-Bind" sections. |
| RR 100 | Date and distribution information only. |
| RR 101 | Black-out all *except* "Bolt Action Rifles" section. |
| RR 102 | Black-out all *except* "Model 700 Classic" section. |
| RR 106 | Black-out all *except* author-initials reference. |
| RR 118 | Date and distribution information only. |
| RR 120 | Black-out all *except* "Bolt Action Rifle Development" section. |
| RR 121 | Black-out all *except* "Model Seven" section. |
| RR 122–23 | Black-out all *except* "Model 700 Restyle" section. |
| RR 135 | Date and distribution information only. |
| RR 139 | Black-out all *except* "Bolt Action Rifles" section. |
| RR 149 | Date and distribution information only. |
| RR 150–51 | Black-out all *except* "Bolt Action Rifle," "Model 700 ADL" and "Model Seven" sections. |
| RR 154 | Black-out all *except* first three sentences of "Automatic Fire Control" section. |
| RR 160 | Date and distribution information only. |
| RR 161 | Black-out all *except* "New Bolt Action Rifle" section. |
| RR 168 | Date and distribution information only. |

RR 170–71 Black-out all *except* "Bolt Action Rifle" and "Model Seven" sections.

RR 239 Date and distribution information.

RR 241 Black-out all *except* "Bolt Action Rifle" section.

RR 243 Black-out all *except* "Model Seven" section.

RR 301 Date and distribution information only.

RR 306 Black-out all *except* "Bolt Action Rifle" section.

RR 317 Date and distribution information.

RR 318 Black-out all *except* "Bolt Action Rifle" section.

RR 346 Date and distribution information only.

RR 351 Black-out all *except* "New Bolt Action Rifle" section.

RR 360 Black-out all *except* author reference.

RR 386 Date and distribution information only.

RR 388 Black-out all *except* heading "New Bolt Action Rifle" and the second sentence of the following paragraph.

RR 392 Black-out all *except* author reference.

RR 400 Date and distribution information only.

RR 402 Black-out all *except* first paragraph of "New Bolt Action Rifle" section.

RR 406 Black-out all *except* author reference.

RR 447 Date and distribution information only.

RR 449 Black-out all *except* first paragraph of "New Bolt Action Rifle" section.

RR 452 Black-out all *except* author reference.

RR 460 Date and distribution information only.

RR 462 Black-out all *except* "New Bolt Action Rifle" section, both paragraphs.

RR 465 Black-out all *except* author reference.

RR 468 Date and distribution information only.

RR 470 Black-out all *except* "New Bolt Action Rifle" section.

RR 473 Black-out all *except* author reference.

RR 476 Date and distribution information only.

RR 483 Black-out all *except* first two paragraphs of "New Bolt Action Rifle" section.

RR 488 Black-out all *except* author and date references.

RR 505 Date and distribution information only.

RR 512 Black-out all *except* first paragraph of "New Bolt Action Rifle" section.

RR 514 Black-out all *except* author reference.

RR 536 Black-out all *except* date and distribution information and three paragraphs of "NBAR" section.

RR 539 Date and distribution information only.

RR 540 Black-out all *except* "NBAR" section.

RR 542 Date and distribution information only.

RR 543 Black-out all *except* "NBAR" section.

RR 570 Date and distribution information only.

RR 576–77 Black-out all *except* paragraphs one, two and four of "New Bolt Action Rifle" section.

RR 583 Black-out all *except* "NBAR Modeling" section and author and date references.

RR 620 Entire page.

RR 623 Date and distribution information only.

RR 625 Black-out all *except* first two paragraphs of "NBAR" section.

RR 633 Date, heading and first two paragraphs of page.

| | |
|---|---|
| RR 634 | Date, distribution, heading, and first two paragraphs of page. |
| RR 658 | Date and distribution information only. |
| RR 659 | Black-out all *except* "New Bolt Action Rifle" section. |
| DF 882 | Entire page. |
| DF 1286 | Date and distribution information only. |
| DF 1289 | Black-out all *except* "New Bolt Action Rifle" section. |
| DF 1290 | Author-initials and date references. |
| DF 1293 | Date and distribution information only. |
| DF 1298 | Black-out all *except* first paragraph of "New Bolt Action Rifle" section and author-initials. |
| DF 1311 | Date and distribution information only. |
| DF 1312 | Black-out all *except* heading, names and first paragraph of "New Bolt Action Rifle" section and author-initials reference. |
| DF 1314 | Date and distribution information only. |
| DF 1315 | Black-out all *except* heading, names and first paragraph of "New Bolt Action Rifle" section and author-initials. |
| DF 1332 | Date and distribution information only. |
| DF 1338 | Black-out all *except* "New Bolt Action Rifle" section. |
| DF 1345 | Date and distribution information only. |
| DF 1348–49 | Black-out all *except* "New Bolt Action Rifle" section. |
| DF 1357 | Date and distribution information only. |
| DF 1362 | Black-out all *except* "Bolt Action Rifle" section. |
| DF 1368 | Date and distribution information only. |
| DF 1371–72 | Black-out all *except* "Bolt Action Rifle" section. |
| DF 1373 | Date and distribution information only. |
| DF 1377 | Black-out all *except* "Bolt Action Rifle" section. |
| DF 1379 | Date and distribution information only. |
| DF 1386–87 | Black-out all *except* "Bolt Action Rifle" section. |
| DF 1394 | Date and distribution information only. |
| DF 1395 | Black-out all *except* seventh paragraph. |
| DF 1400–01 | Black-out all *except* "Bolt Action Rifle" section. |
| DF 1402 | Black-out all *except* "Model 700 BDL" section. |
| DF 1403–04 | Black-out all *except* "Model Seven Lightweight" section. |
| DF 1408 | Date and distribution information only. |
| DF 1415–16 | Black-out all *except* "Bolt Action Rifle" section. |
| DF 1417–18 | Black-out all *except* "Model Seven Lightweight" section. |
| DF 1425 | Entire page. |
| DF 1842 | Date and distribution information only. |
| DF 1843 | Black-out all *except* first fifteen lines of "NBAR" section. |
| DF 1845 | Date and distribution information only. |
| DF 1846 | Black-out all *except* "New Bolt Action Rifle" section. |
| DF 1849 | Black-out all *except* date and distribution information and "NBAR" section. |
| DF 1852 | Date and distribution information only. |
| DF 1853 | Black-out all *except* "NBAR" section. |
| DF 1856 | Black-out all *except* "NBAR" section. |
| DF 1858 | Date and distribution information only. |
| DF 1860 | Black-out all *except* "NBAR" section. |
| DF 1863 | Date and distribution information only. |
| DF 1865 | Black-out all *except* first two paragraphs of "NBAR" section. |
| DF 1866 | Date and distribution information only. |
| DF 1873 | Black-out all *except* first two paragraphs of "NBAR" section. |

| | |
|---|---|
| DF 1878 | Black out all *except* author-initials reference. |
| DF 1890 | Date and distribution information only. |
| DF 1897 | Black-out all *except* first two paragraphs of "New Bolt Action Rifle" section. |
| DF 1899 | Black out all *except* author-initials reference. |
| DF 1902 | Black-out all *except* "New Bolt Action Rifle" section. |
| DF 1906 | Black out all *except* author-initials reference. |
| DF 1909 | Date and distribution information only. |
| DF 1916 | Black-out all *except* first two paragraphs of "New Bolt Action Rifle" section. |

\*\*Note: page DF 1917 is missing.

| | |
|---|---|
| DF 1921 | Black out all *except* author-initials reference. |
| DF 1924 | Date and distribution information only. |
| DF 1925 | Black-out all *except* last heading and section entitled "Rifle Development." |
| DF 1929 | Black-out all *except* first two paragraphs of "New Bolt Action Rifle" section. |
| DF 1930 | Black-out all *except* "Model 700 Classic" section. |
| DF 1934 | Black out all *except* author-initials reference. |
| RR 1398 | Date and distribution information only. |
| RR 1399 | Black-out all *except* fourth paragraph. |
| RR 1403–06 | Black-out all *except* "New Bolt Action Rifle," "Model Seven Lightweight," and all three "Model 700" sections. |
| RR 1410 | Date and distribution information only. |
| RR 1414–15 | Black-out all *except* "New Bolt Action Rifle," "Model Seven Lightweight," and "Model 700 ADL" sections. |
| RR 1427 | Date and distribution information only. |
| RR 1434 | Black-out all *except* "Bolt Action Rifles" section. |
| RR 1435 | Black-out all *except* first three paragraphs of "Model 700 ADL" section. |
| RR 1443 | Date and distribution information only. |
| RR 1447–48 | Black-out all *except* "Bolt Action Rifles" section. |
| RR 1450 | Black-out all *except* "Model 700 ADL" section. |
| RR 1451–52 | Black-out all *except* first paragraph "Model Seven Lightweight" section. |
| RR 1456 | Date and distribution information only. |
| RR 1461 | Black-out all *except* "Model 7" section. |
| RR 1468 | Black out all *except* author-initials and date references. |
| RR 1481 | Date and distribution information only. |
| RR 1493–94 | Black-out all *except* "Model 700 Mountain Rifle" and "New Bolt Action Rifle" sections. |
| RR 1494 | Black-out all *except* "Model Seven Lightweight" section. |
| RR 1495 | Black out all *except* author-initials reference. |
| RR 1497 | Date and distribution information only. |
| RR 1500–01 | Black-out all *except* "NBAR," "Model 700 Mountain Rifle," and "Model Seven Lightweight" sections. |
| RR 1512 | Date and distribution information only. |
| RR 1517 | Black-out all *except* "Bolt Action Rifle" section. |
| RR 1518–19 | Black-out all *except* "Model Seven Lightweight" section. |
| RR 1533 | Date and distribution information only. |
| RR 1540–41 | Black-out all *except* "Bolt Action Rifle" section. |
| RR 1542–43 | Black-out all *except* "Model Seven Lightweight" section. |
| RR 1548 | Date and distribution information only. |
| RR 1555 | Black-out all *except* "Bolt Action Rifle" section. |
| RR 1556 | Black-out all *except* "Model Seven Lightweight" section. |
| RR 1567 | Date and distribution information only. |

RR 1574–75 Black-out all *except* "Bolt Action Rifle" section.

RR 1576–77 Black-out all *except* "Model Seven Lightweight" section.

RR 1582 Date and distribution information only.

RR 1588–89 Black-out all *except* "Bolt Action Rifle" section.

RR 1591–92 Black-out all *except* nine paragraphs of "Model Seven Lightweight" section.

RR 1606 Date and distribution information only.

RR 1611 Black-out all *except* "Bolt Action Rifle" section.

RR 1612 Black-out all *except* "Model Seven Floor Plate" section.

RR 1636 Date and distribution information only.

RR 1639 Black-out all *except* "New Bolt Action Rifle" section.

RR 1640 Black-out all *except* "Model 700 Mountain Rifle" section and author-initials, date references.

RR 1641 Date and distribution information only.

RR 1645–46 Black-out all *except* "New Bolt Action Rifle" and "Model 700 Classic" sections.

RR 1649 Black out all *except* author-initials reference.

RR 1652 Date and distribution information only.

RR 1656 Black-out all *except* "New Bolt Action" section.

RR 1659 Black out all *except* author-initials reference.

RR 1661 Date and distribution information only.

RR 1664–65 Black-out all *except* "Model 700 Mountain Rifle" and "New Bolt Action Rifle" sections.

RR 1666 Date and distribution information only.

RR 1670–71 Black-out all *except* "Model 700 Mountain Rifle" and "New Bolt Action" sections.

RR 1672 Date and distribution information only.

RR 1678 Black-out all *except* "Model 700 Mountain Rifle" and "New Bolt Action" sections.

RR 1685 Black out all *except* author-initials reference.

RR 1699 Date and distribution information only.

RR 1703–04 Black-out all *except* "Model 700 Mountain Rifle," "New Bolt Action" sections and author-initials reference.

RR 1719 Date and distribution information only.

RR 1724 Black-out all *except* "Model 700 Mountain Rifle" and "New Bolt Action" sections.

RR 1733 Black out all *except* author-initials reference.

RR 1736 Date and distribution information only.

RR 1741–42 Black-out all *except* "Model 700 Mountain Rifle" and "New Bolt Action" sections.

RR 1759 Date and distribution information only.

RR 1763–64 Black-out all *except* first two paragraphs of "New Bolt Action," "Model 700 Classic" sections, and author-initials reference.

RR 1767 Date and distribution information only.

RR 1774 Black-out all *except* first two paragraphs of "New Bolt Action" section.

RR 1779 Black out all *except* author-initials reference.

RR 1782 Date and distribution information only.

RR 1789 Black-out all *except* "New Bolt Action" section.

RR 1791 Black out all *except* author-initials reference.

RR 1794 Date and distribution information only.

RR 1801 Black-out all *except* first two paragraphs of "New Bolt Action" section.

RR 1806 Black out all *except* author-initials reference.

RR 1810 Date and distribution information only.

RR 1816–17 Black-out all *except* paragraphs one, two and four of "New Bolt Action" section.

RR 1823 Black out all *except* "NBAR Modeling" section and author-initials, date references.

RR 1832 Date and distribution information only.

RR 1833 Black-out all *except* "New Bolt Action" section.

RR 1836–37 Entire document.

RR 1878 Date and distribution information only.

RR 1879 Black-out all *except* "NBAR" section.

File 10

**Produce *only* the following documents in this file:**

DF 544–45 Entire document.

DF 881 Entire document.

DF 1291 Date and distribution information only.

DF 1292 Black-out all *except* "New Bolt Action," sections.

DF 1299 Black-out all *except* date and distribution information and "NBAR" section.

DF 1300 Black-out all *except* "Model 700 Classic" section.

DF 1303 Black-out all *except* date and distribution information, paragraph one of "700 Mountain Rifle" and "NBAR" sections.

DF 1304 Black-out all *except* Date and distribution information, "Model 700 Mountain Rifle" section.

DF 1305 Black-out all *except* "New Bolt Action" section.

DF 1313 Black-out all *except* date and distribution information and "New Bolt Action" section.

DF 1316 Black-out all *except* date and distribution information and "New Bolt Action" section.

DF 1323 Black-out all *except* date and distribution information and "New Bolt Action" section.

DF 1325 Black-out all *except* date and distribution information and first two paragraphs.

DF 1326 Black-out all *except* "New Bolt Action" section.

DF 1330 Black-out all *except* date and distribution information and "New Bolt Action" section.

DF 1350 Entire page.

DF 1443 Black-out all *except* Date and distribution information, "New Bolt Action" and "M/700 Classic" sections.

DF 1839 Entire document.

DF 1939 Date and distribution information only.

DF 1940 Black-out all *except* "New Bolt Action" section.

DF 2001 Black-out all *except* first seventeen lines of document.

DF 2011 Black-out all *except* first seventeen lines of document.

DF 2012 Black-out all *except* date and distribution information and first three paragraphs of text.

RR 525 Entire document.

RR 529 Entire document.

RR 547 Entire document.

RR 558 Entire document.

RR 596 Entire document.

RR 598 Entire document.

RR 620 Entire document.

RR 621a Entire document.

RR 629–30 Entire document.

RR 632 Entire document.

RR 634 Entire document.

### File 11

**Produce all documents in this file *except*:**

DF 100 Black-out paragraphs four and nine.
DF 110 Black-out last section, including two paragraphs.
DF 890 Black-out title and following text.
DF 1465 Black-out first four words of second line of text and lines four through nine which encompass the second section.
DF 1530–33
DF 1812 Black-out last five lines of page which is entire last section.
DF 2017 Black-out lines ten through thirteen of text.
DF 2018 Black-out sentence beginning with the word "Extra."
DF 2019 Black-out line beginning with the word "Finishes."
DF 2503 Black-out last five lines of text.
DF 2504
DF 2505–06
DF 2978–93

### File 12

**No documents in this file need be produced.**

### File 13

**Produce all documents in this file *except*:**

DF 1429–31
Any documents dated *after* November of 1987.

### File 14

**Produce all documents in this file *except*:**

DF 1156 Black-out all *except* last five lines of text.
DF 1158 Black-out all *except* first two lines and date and distribution information.
DF 1160
DF 1162 Black-out all *except* date and last five lines of text.
DF 1163 Black-out last twelve lines of text.
DF 1166 Black-out all *except* date and last thirteen lines of text.
DF 1178 Black-out all *except* date and last fourteen lines of text.
DF 1179 Black-out all *except* date and first ten lines of text.
DF 1180 Black-out all *except* date and "Bolt Action" section.
DF 1181 Black-out all *except* date and
DF 1182–83 Black-out all *except* date and "Bolt Action" section.
DF 1184 Black-out all *except* date and "Bolt Action" and "Model Seven Lightweight" sections.
DF 1185 Black-out all *except* date and "Bolt Action" and "Model Seven Lightweight" sections.
DF 1186 Black-out all *except* date and "Bolt Action" section.
DF 1187 Black-out all *except* date and "Bolt Action" and "Model Seven Lightweight" section.
DF 1188 Black-out all *except* the twenty-seventh through thirty-third lines of text.
DF 1189 Black-out all *except* the twenty-second through thirty-third lines of text.
DF 1190 Black-out all *except* the first three lines of text and lines ten through seventeen of text.
DF 1218
DF 1224

DF 1259
DF 1265–67
DF 1270–71
DF 1273

<u>File 15</u>
**No documents in this file need be produced.**
<u>Supplementary In Camera Submissions Attached to Hutton Affidavit</u>
**Produce *only* the following document in this file:**
RR 634

---

### ORDER ON MOTION FOR RECONSIDERATION

#### April 28, 1992

Before the Court is Defendant Remington Arms Co., Inc.'s motion for reconsideration of the April 13, 1992 Order. On April 13, 1992, the Court ordered Remington to produce the documents designated in Appendix A. The Court further ordered the parties to submit a joint proposed protective order by April 23, 1992, for Court approval. Remington submitted the above-referenced motion on the April 23rd deadline, rather than the proposed protective order. The Court held a teleconference with the parties concerning the motion.

Remington's motion raises overall objections to the extent of Court-ordered disclosure and raises specific objections to certain documents. Remington states that it can provide the Court with a complete list of the objected documents, but that it needs "several days to compile this list since each document must be reviewed."

Remington has already had more than several days, in fact it waited until the last of the ten days provided by the Court Order to file the present motion. The Court has reviewed Remington's objections, both the general and specific objections. Some of the objections are well-taken and are provided further protection as noted below. Other objections are simply repeated and have been discussed extensively elsewhere. The Court has conducted considerable factual and legal analysis of the documents. The Court will not entertain any further motions for reconsideration.

Most of Remington's objections have been previously addressed. It must be re-membered that Remington primarily has based its privilege from full disclosure on the contention that the *in camera* documents pertain to a new bolt action rifle (NBAR), which is still under development. Documents which concern the Model 700, the specific subject of this litigation, are not protected by that privilege. Where documents concerning the Model 700, the NBAR, or other Remington products address the problems or alternatives for triggers, bolt locks, and other mechanisms related to accidental discharge, plaintiff's need for many of those documents has been found to outweigh Remington's interest in their secrecy. For clarification, the Court notes that customer-sales analysis has generally been protected from disclosure, but where those documents contain discussions of prototype models and design options, that material has been ordered disclosed. Most documents which post-date the November 1987 injury and those which address costs have been protected from disclosure, but a few documents which reference the continuing research of the fire control and its priority level, cost considerations, and legal concerns in modifying the rifle mechanisms are relevant to plaintiff's claims and Remington's knowledge of feasible options. The documents are relevant and necessary. Yes, some of the documents to be produced are sensitive, but the parties' competing interests will be sufficiently protected by a protective order.

#### Conclusion

The Court makes the following modifications to its April 13, 1992 Order. It is hereby

ORDERED that Remington's motion to reconsider is sustained in part and denied in part. It is further

ORDERED that the April 13, 1992 Order is modified in the following respects. Remington is required to produce the documents designated in Appendix A of the April 13, 1992 Order, as is modified by Appendix B which is attached to this Order. It is further

ORDERED that Remington shall file a joint protective order and produce all documents ordered to be disclosed to plaintiff within five (5) calendar days of this Order. The Court will not reconsider its ruling in this regard. A motion for reconsideration or any other form of objection will be an inappropriate response to this Order to file a joint protective order and produce the documents within five days. If the parties fail to file a joint protective order by the stated deadline, the delinquent party or parties will face potential sanctions. It is further

ORDERED that if defendant finds it absolutely necessary to raise a related issue, it must do so by requesting a telephone conference no later than three calendar days after entry of this Order. It is further

ORDERED that Remington file *in camera* with the Court copies of documents which have been noted as missing from the Court's files. These documents include DF 281, DF 716, DF 1012–13, and DF 1917. It is further

ORDERED that in future briefs which reference the *in camera* submission, the parties should designate in which file number the document may be found.

### APPENDIX B

Remington Arms Co., Inc. shall produce for discovery the documents noted in Appendix A, which is incorporated into the Court's April 13, 1992 Order. That Order is modified with respect to the documents specified herein.

### File 2

The following documents need *not* be produced or specific information may be redacted as is noted.

| | |
|---|---|
| DF 65 | Need not produce. |
| DF 277 | Need not produce. |
| DF 390 | Need not produce. |
| DF 1116 | Black-out paragraph 3. |
| DF 1123 | Need not produce. |
| DF 1124 | Need not produce. |
| DF 1125 | Need not produce. |
| DF 1127 | Black-out second sentence of first paragraph. |
| DF 1444–50 | Need not produce. |
| DF 1543 | Need not produce. |
| DF 1809 | Need not produce. |
| DF 1810 | Need not produce. |
| DF 2335 | Black-out second sentence of first paragraph. |
| DF 2340 | Black-out paragraph 3. |
| DF 2494 | Black-out last seven lines of text. |
| DF 2837 | Need not produce. |
| DF 2838–39 | Need not produce. |

### File 4

The following documents need *not* be produced or specific information may be redacted, as is noted.

| | |
|---|---|
| DF 151 | Need not produce. |
| DF 153 | Black-out only upper right corner, margin note. |
| DF 678 | Black-out only second line. |

| | |
|---|---|
| DF 679 | Black-out only title-heading. |
| DF 1506–07 | Information about Model 870 or shotguns. |
| DF 693 | Black-out last typed line. |

### File 5

The following documents need *not* be produced or specific information may be redacted, as is noted.

| | |
|---|---|
| DF 161 | Black-out last typed line. |
| DF 249 | Need not produce. |
| DF 268 | |

### File 8

The following documents need *not* be produced.

TM 623–24

### File 9

The following documents need *not* be produced.

RR 154
RR 633

### File 11

The following documents need *not* be produced or specific information may be redacted, as is noted.

[** Note: DF 281 is missing from Court file.]

| | |
|---|---|
| DF 625 | Black-out only first four words of line 14. |
| DF 635 | Black-out only first four words of line 14. |
| DF 657 | Black-out paragraphs numbered 4 and 9. |
| DF 690 | Black-out only first line topic. |
| DF 691 | Black-out title-heading only. |

[** Note: DF 716 is missing from Court file.]
[** Note: DF 1012 and DF 1013, discussed at page 7 of Remington's motion, are not found in File 11.]

| | |
|---|---|
| DF 2523 | Black-out last five lines of text. |
| DF 2525 | Need not produce. |

### File 14

The following documents need *not* be produced or specific information may be redacted, as is noted.

| | |
|---|---|
| DF 1218 | Need not produce. |
| DF 1272 | Black-out the line which includes three dollar figures. |

---

### ORDER

#### May 5, 1992

The Court conducted a telephone conference on May 4, 1992. Pursuant to that conference, it is hereby

ORDERED that the documents specified in Appendix C, attached hereto, are protected from disclosure to plaintiff, as noted. It is further

ORDERED that the parties be prepared to discuss the protective order and production of documents in a telephone conference to be held at 1:00 p.m. on May 8, 1992.

### APPENDIX C

Remington Arms, Inc. shall produce for discovery the documents noted in Appendix A, which is incorporated into the Court's April 13, 1992 Order, as is modified by Appendix B in the April 28, 1992 Order, and as further modified herein.

### File 2

Specific information in the following documents may be redacted as is noted.

| | |
|---|---|
| DF 1487–89 | Information about Model 870 or shotguns. |
| DF 1506–07 | Information about Model 870 or shotguns. |

## PROTECTIVE ORDER

### June 15, 1992

On April 13, 1992, this Court ordered Defendant Remington Arms Company, Inc. (Remington) to produce certain documents concerning the New Bolt Action Rifle subject to a protective order to be agreed upon by the parties. The April 13, 1992 Order has been amended by this Court's Orders of April 28, 1992 and May 5, 1992. This Protective Order applies to all documents reviewed by the Court *in camera*, found confidential and ordered produced under these Orders or any future Order of this Court.

The parties have been unable to agree on a proposed protective order. The Court has reviewed and compared the proposed protective orders submitted by plaintiff and Remington. The Court also has held lengthy teleconferences in which the parties expressed their concerns and needs for a Protective Order. The Court believes this Protective Order balances the parties' needs and is appropriate under the circumstances present in this case.

This Protective Order recognizes that Remington will produce documents which the Court has found to be trade secrets as set forth in prior Orders. This Order also establishes a procedure for making such documents and information available to counsel for use in this case, as well as in similar Remington bolt action rifle litigation, while at the same time protecting Remington's proprietary interest.

It is therefore ORDERED

1. That all documents, data, studies and other materials produced pursuant to any request for production, subpoena or other mode of discovery that have been or are found by this Court to be of a trade secret, privileged, proprietary or confidential nature (hereinafter Trade Secret information) shall be produced pursuant to the terms of this Order and shall be treated by all persons accorded access pursuant to this Order as Trade Secrets, containing confidential or privileged commercial and financial information. Access to the original Trade Secret information shall be made available to plaintiff only at the offices of counsel for Defendant Remington, by prearranged appointment as reasonably requested. The specific location where all documents produced under this Protective Order shall be reviewed is: Lathrop and Norquist, 2600 Mutual Benefit Life Building, 2345 Grand Avenue, Kansas City, Missouri, 64108. Access to the original documents at the offices of counsel for Remington shall be provided only to counsel for plaintiff, Richard C. Miller, his co-counsel, and any attorney or paralegal who will assist in reviewing the original documents. All pages of all copies of documents provided to plaintiff's counsel pursuant to this Order or any future Order of this Court shall bear a clearly visible designation of "Confidential." Any failure of Remington to designate each page as "Confidential" shall result in a loss of protection for that page.

2. Remington's Index of documents submitted *in camera* shall be redacted to delete only descriptions of the contents and authors of those documents which the Court does not order Remington to produce. All other information regarding each document, including the page numbers and dates, shall be retained. Remington shall provide a copy of the index marked "Confidential" with the documents and information produced.

3. That this Protective Order shall apply only to those documents provided to the Court for *in camera* review in this litigation as set forth on Remington's Index, referred to previously. The Court's review of the indexed documents submitted *in camera* was thorough, complete and final, subject to the right of the parties to seek limited reconsideration of same as set forth below or extraordinary relief by appeal.

4. In light of the effort expended by this Court, the Court intends that its Or-

ders be available in similar Remington bolt action rifle litigation and be adopted or modified to the extent determined appropriate by the presiding judicial authority and as is consistent with applicable law. Therefore, the following information from this litigation shall be made available to any other judge in similar Remington bolt action rifle litigation where counsel for plaintiff is a counsel of record: this Protective Order; the April 13, April 28, and May 5, 1992 Orders; any other Orders entered in this case; all information, briefs, and affidavits submitted to this Court *in camera;* and the complete unredacted index of *in camera* documents. This information shall be available to review, modify, or adopt in such litigation as any judge finds relevant and appropriate. Counsel for plaintiff may provide a copy of this Protective Order to any judge in such litigation and, where the judge requests the aforementioned information, this Protective Order facilitates defendant's disclosure of information from the present action to that other judge. It is, of course, the prerogative of any other judge to determine whether the litigation is similar, whether the information is relevant, and whether the information should be disclosed under the laws applicable in that litigation.

5. At the conclusion of the review of the Trade Secret documents produced, counsel for plaintiff shall provide counsel for Remington with a list designating those documents selected to be copied at plaintiff's expense. Within ten (10) days of receipt of this list, counsel for Remington shall provide counsel for plaintiff copies of the specific requested documents.

6. Counsel for plaintiff may also list and identify as specifically as possible without seeing them any other documents reviewed *in camera* which the Court did not order Remington to produce but which plaintiff, for good cause, believes should be produced. Within ten (10) days of receipt of this list, counsel for plaintiff will advise counsel for plaintiff of any objections to production of these documents. Copies of all documents, the production of which Remington does not oppose, shall also be provided to plaintiff within ten (10) days of the receipt of plaintiff's list. Counsel for

plaintiff and counsel for Remington will confer in order to resolve any dispute over whether documents that were originally found to be absolutely privileged in the Court's initial *in camera* review should be produced. If complete agreement between counsel cannot be reached, plaintiff shall be permitted to file a limited *in camera* motion for reconsideration regarding those documents which plaintiff alleges should not be absolutely privileged. Counsel for Remington shall respond to· this motion, likewise *in camera* within ten (10) days. Again, it is contemplated that counsel for the parties acting in good faith will reduce and limit the number of documents, if any, to be so handled.

7. That copies of Trade Secret information produced pursuant to this Order, as well as all transcripts, notes and records discussing same shall be available solely to plaintiff's counsel, his co-counsel, any member of their firms participating or assisting in this litigation and those persons retained as liability experts, either consulting or to testify, in this matter. No such expert retained by plaintiff may be an officer, director, or regular employee or ever have been a regular employee of any corporation, entity or person who is a manufacturer of bolt action firearms or a competitor of Remington in the firearms market. Because of the limitation on employment of plaintiff's experts by the firearms industry, Remington is prohibited in this matter from cross-examining plaintiff's liability experts on the lack of employment by a firearm's manufacturer or the firearms industry in general. However, plaintiff may make the Trade Secret information available to any liability expert retained by Remington or E.I. Du Pont de Nemours Co. in this matter as well as any Remington officer, director or employee, past or present. Each plaintiff's counsel shall be personally responsible for the co-counsel's and the expert's compliance with the terms of this Protective Order.

8. That prior to permitting access to Trade Secret information to any person as contemplated above, counsel for plaintiff shall require the person to whom disclosure is to be made to read a copy of this Protective Order and to certify in a written affidavit that he or she has reviewed this Or-

der and consents to be bound by its terms. The affidavit so executed shall contain the signatory's full name, business address and employer, and the name of the litigation party with whom the signatory is associated. Such affidavit shall be served upon counsel for Remington before disclosure is made and if no written objection thereto is served upon counsel requesting same within ten (10) days then disclosure shall follow. Attached hereto as Exhibit "A" and incorporated by reference is the affidavit form for use in compliance with the terms of this paragraph. Counsel for each party shall keep a complete and current record of all persons to whom any Trade Secret information has been disclosed. If any Trade Secret information remains for a period of time in the possession of anyone but counsel of record under the terms of this Protective Order, counsel shall also list the items of Trade Secret information which each individual retains.

9. That all parties in possession of Trade Secret information pursuant to the terms of this Order shall notify Remington of their intent to use or present such information on the record whether by deposition, pleading, oral argument, or otherwise ten (10) days in advance of such use. If Remington objects to the proposed use of Trade Secret information, it must notify that party of its specific objections at least five (5) days in advance of such use. Counsel for the parties shall discuss any objections and if the parties cannot resolve the objections it shall be Remington's duty to arrange a telephone conference with the Court prior to the date of intended use. All transcripts and pleadings on this issue shall be filed *in camera.*

10. Disclosure of Trade Secret information in a deposition or a hearing in this matter shall be made only under the conditions that the material and that portion of any transcript related to same is then immediately placed under seal subject to further orders of this Court regarding its disclosure at trial or otherwise. Remington shall designate on the sealed record all material and any portion of transcripts which are sealed in this fashion and failure to do so results in a loss of protection for

same. Remington shall obtain from each court reporter or other entity retained to record depositions or hearings all records of same, excluding the transcribed original and the parties' copies of same, and shall maintain all such records until the conclusion of all Remington bolt action rifle litigation in which the proceeding occurred.

11. That all persons who may be entitled to receive, or who are afforded access to any Trade Secret information by reason of this Order shall neither use nor disclose the Trade Secret information for purposes of business, competition, or any purpose other than the preparation for and conduct of this litigation as contemplated herein and shall keep the Trade Secret information secure in accordance with the purpose and intent of this Order.

12. That this Protective Order or any prior Order of this Court does not affect or control the discovery of any other documents in this or any other matters not reviewed by this Court *in camera.* The parties retain the right to question, challenge and object to the admissibility at trial of any and all documents, information and other evidence furnished under the terms of the Protective Order.

13. If any document or information is introduced into evidence in open Court or otherwise becomes a matter of public record, it shall lose its protected status under the terms of this Order. This Order shall in no way constitute a waiver of the rights of any party herein to contest any assertion or to appeal any finding that specific information is not Trade Secret information or should not be subject to the protective requirements of this Order.

14. That no later than ninety (90) days after completion of this proceeding and any related appeals, all Trade Secret information furnished under the terms of this Protective Order, including all copies and notes of same, which are not otherwise a matter of public record, shall be returned to counsel for Remington. Transcripts of any sealed depositions, hearings or trials that have not otherwise become matters of public record shall remain under seal, subject to further order of this Court.

## EXHIBIT A

AFFIDAVIT OF _____

STATE OF _____ )
 ) ss.
COUNTY OF _____ )

1. My name is _____. I live at
 (State Name)

_____. I am employed as
 (State Address)

_____ by _____.
(State Position) (State Name and Address of Employer)

2. I am aware that a document and information protective order has been entered in John R. Hartman, Jr. v. Remington Arms Company, Inc., et al., Case No. 90–4074–CV–C–5 in the United States District Court for the Western District of Missouri, Central Division, and a copy thereof has been given to me.

3. I promise that the documents and information given confidential treatment under the protective order in this case will be used by me only in connection with assisting counsel for the plaintiffs or defendants in preparing for litigation of the above-captioned matter.

4. I promise that I will not disclose or discuss such confidential documents or information with any person other than the parties, and counsel for the parties of members of their staff.

5. I understand that any use of the information obtained by me from materials stamped **"CONFIDENTIAL"** or any portions or summaries thereof, in any manner contrary to the provisions of the protective order may subject me to sanction by this Court.

_____

Subscribed and sworn to before me, a notary for and in the above said State and County, this _____ day of _____, 199___.

_____
Notary Public

My Commission Expires: